**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

versus                                          CRIMINAL NO. 17-119-SDD-EWD

RENATA FOREMAN

**RULING**

Before the Court are the *pro se Motions for Disqualification and Recusal* filed by the Defendant, Renata Foreman ("Foreman").[1] The United States ("the Government") has filed *Oppositions* to these motions.[2] For the following reasons the motions are DENIED.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Foreman was convicted by a jury of three counts of wire fraud and three counts of aggravated identity theft.[3] Foreman was sentenced by this Court to a total term of imprisonment of 111 months,[4] and her conviction and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit.[5]  Foreman subsequently filed a 28 U.S.C. § 2255 motion, which is pending.[6] In her § 2255 Motion, Foreman argues, *inter alia*, that this matter should be reassigned due to the alleged bias of the undersigned.[7]

---

[1] Rec. Doc. Nos. 170, 173.  Foreman has filed several briefs in further support of these motions. The Court has considered all filings in the record.
[2] Rec. Doc. Nos. 172, 174, 178, 184
[3] Rec. Doc. No. 49.
[4] Rec. Doc. No. 91.  Foreman was sentenced to Imprisonment for a total term of 87 months on each of counts 1, 2, and 3, to run concurrently, and a term of 24 months on each of counts, 4, 5 and 6, to be served concurrently with each other, but consecutive to counts 1, 2, and 3, for a total term of imprisonment of 111 months.
[5] *United States v. Foreman*, 797 Fed. App'x 867 (5th Cir. 2020).
[6] Rec. Doc. No. 121.
[7] *Id.*

The primary source of the Court's alleged bias is that the undersigned served as an ad hoc hearing officer for the Louisiana Workforce Commission ("LWC") from 2008–2013. Although Foreman's Section 2255 Motion is still pending, she filed the present motions for disqualification and recusal, alleging that this "conflict of interest" existed during her criminal case because the undersigned was "a former employee of the Louisiana Workforce Commission (LWC) the alleged victim in the case against Defendant."[8] Reading the motions liberally, Foreman claims that the undersigned committed error by not recusing herself prior to trial and sentencing, and she appears to be asking for a new trial or a new sentencing hearing. The Court analyzes this as a § 2255 Motion based on a failure to recuse.[9]

## II.    LAW AND ANALYSIS

### A.  Relief under Section 2255

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if, "that sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Fifth Circuit has stated that, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised in a direct appeal and would, if condoned, result in a complete miscarriage of justice." [10]

---

[8] Rec. Doc. Nos. 170 & 173.
[9] The Government correctly notes that, because "there is no other known avenue by which For[e]man could correctly allege this type of claim at this juncture, this Court should construe this claim as one made under § 2255. The United States has no objection to treating the filing as a motion to amend her § 2255 motion." Rec. Doc. No. 172, p. 5 (citing *United States v. Trevino*, 554 F. App'x 289, 293–294 (5th Cir. 2014)).
[10] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).

"When a § 2255 motion is filed, the district court must first conduct a preliminary review."[11] "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[12] If the motion raises a non-frivolous claim to relief, the court must order the government to file a response or to take other appropriate action.[13] After reviewing the government's response along with any other relevant materials, the court must determine whether an evidentiary hearing is warranted.[14]   An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[15] No evidentiary hearing is required, however, if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations."[16]

When a defendant has exhausted his right to appeal, his conviction and sentence are presumed to be fair and final.[17] Therefore, an issue raised for the first time in a motion pursuant to 28 U.S.C. § 2255 will be considered only if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[18] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[19]

---

[11] *United States v. Hutton*, No.16-184, 2020 WL 5517332, *2 (E.D. La. Sep. 14, 2020)
[12] Rules Governing § 2255 Proceedings, Rule 4(b).
[13] *Id.*
[14] Rules Governing § 2255 Proceedings, Rule 8.
[15] 28 U.S.C. § 2255(b).
[16] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[17] *United States v. Frady*, 456 U.S. 152,164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)(en banc).
[18] *Frady*, 456 U.S. at 167-68; *Shaid*, 937 F.2d at 232.
[19] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney and are provided a liberal construction.[20] Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."[21] Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition ... to be of probative evidentiary value."[22]

### B. Recusal Standards

As shall be discussed in detail below, beyond several procedural bars, Foreman's motions fail on the merits.  Recusal and disqualification are governed by 28 U.S.C. §§ 144 and 455.  The claims presented by Foreman fall under Sections 455(a) and 455(b)(1), which read:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which h[er] impartiality might reasonably be questioned.

> (b) [S]he shall also disqualify himself in the following circumstances:

>> (1) Where [s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;[23]

At the time of Foreman's initial recusal motions, she could not bring a plausible claim under 28 U.S.C. § 144 because she failed to attach an Affidavit, which is required by the statute.[24]  Many months after these initial filings, Foreman filed an Affidavit;

---

[20] *Haines v. Kerner*, 404 U.S. 519 (1972).
[21] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[22] *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).
[23] 28 U.S.C § 455
[24] Additionally, there is some authority suggests that a *pro se* litigant can never meet the plain language of the statute, which requires a certificate of counsel. *United States v. Smith*, 352 F. App'x 84, 87 (7th Cir. 2009); *Williams v. Magnolia Cafe*, No. CV 18-1020-SDD-EWD, 2019 WL 7343507 at *2 (M.D. La. 2019).

however, this Affidavit is rife with baseless and unfounded purported "facts" for which she lacks personal knowledge and unsupported *ad hominin* attacks against the undersigned based on Foreman's subjective beliefs.[25]  Further, despite the late filing of this "Affidavit," Foreman remains ineligible for relief under Section 144 because "a § 144 motion must be accompanied by 'a certificate of counsel of record stating that it is made in good faith.'"[26]

Substantively, a motion to recuse under Section 144 and a judge's duty to recuse under Section 455 are "'quite similar, if not identical.'"[27]  Section 455(a) provides that any "justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned"[28] and Section 455 (b)(1) requires recusal when "[s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."[29]

The crux of Defendant's Motion is reproduced below:

---

[25] *See* Rec. Doc. No. 192.  This Affidavit should be stricken under the Federal Rules of Civil Procedure and the local administrative rules of this Court; however, the Court will allow the submission as it only serves to bolster the Court's findings herein.
[26] *Scott v. Crosby Energy Services*, No. 19-12736, 2021 WL 2255748, *3 (E.D. La. May 28, 2021)(quoting 28 U.S.C. 144).
[27] *Id.* (citations omitted).
[28] 28 U.S.C. § 455(a).
[29] 28 U.S.C. § 455(b)(1).

The Defendant contends that CHIEF JUDGE SHELLY DICK
WAS A FORMER EMPLOYEE OF THE LOUISIANA WORKFORCE COMMISSION
(LWC) THE ALLEGED VICTIM IN THE CASE AGAINST DEFENDANT
RENATA FOREMAN.
Unbeknownst to Ms. Foreman and her court-appointed attorneys
prior to Chief Judge Dick being appointed to the bench
she held a Position appointed by the Lousiana Workforce
Commission (LWC) as a Ad Hoc Officer to hear Worker's
compensation cases and other Administrative matters with-in
the Louisiana Workforce Commission (LWC). Chief Judge Shelly
Dick Held that position from 2008-2013.
THAT IS A CONFLICT OF INTEREST CHIEF JUDGE DICK SHOULD
HAVE RECUSED HERSELF FROM THIS CASE INSTEAD SHE CHOSE TO
CONTINUE PRESIDING OVER THIS CASE. WITH JUDGE DICK'S EXTREME
PREJUDICE AND OBVIOUS BIAS ALL OF THE DECISIONS MADE AT
MS. FOREMAN'S TRIAL WERE AGAINST MS. FOREMAN AND IN FAVOR
OF THE PROSECUTION/GOVERNMENT. RENATA FOREMAN WAS SENTENCED TO
111 MONTHS IMPRISONMENT, AND THE AMOUNT LOSS OF THE LWC WAS
$0.

Plainly read, Foreman alleges that the Court's past engagement as an administrative hearing officer for the LWC was a conflict of interest existing throughout her criminal case which required *sua sponte* recusal by the undersigned. The Court construes this as an "appearance of impropriety claim" under 28 USC §455(a). Foreman fails to allege facts to demonstrate that any of the Court's rulings in the present case were

tainted or motivated by bias; thus, there is no plausible claim made under 28 USC §455(b)(1).

### C. Propriety of Deciding this Motion

The initial inquiry is whether this Court must or should refer this Motion to another Judge. The challenged judge is not required to transfer a disqualification motion to another judge for decision.[30] "The challenged judge is most familiar with the alleged bias or conflict of interest. [She] is in the best position to protect the nonmoving parties from dilatory tactics."[31] Foreman previously filed a judicial misconduct complaint against the undersigned back in 2018, which was considered and rejected by the Fifth Circuit in January 2019.[32]    Although Foreman threatens to file another judicial misconduct complaint against the undersigned, the law is clear that even the pendency of a judicial misconduct complaint does not require the Court to transfer a recusal motion to another judge.[33] Furthermore, the "issue of judicial disqualification is solely one of law"[34] committed to the Court's sound discretion.[35]  Accordingly the Court will decide the present motions.

### D. The Recusal Claim is Procedurally Barred

Foreman "may not raise an issue for the first time on collateral review without showing both 'cause' for [her failure to raise the error] and 'actual prejudice' resulting from

---

[30] *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F.2d 1157, 1162 (5th Cir.1982).
[31] *Id.*
[32] *See* Attachment A.
[33] *In re Mann,* 229 F.3d 657, 658 (7th Cir.2000); *Kampfer v. Gokey,* 175 F.3d 1008, 1999 WL 97234, at *1 (2d Cir. Feb.24, 1999) (unpubl.opin.); *United States v. Bell,* 98 F.3d 1347, 1996 WL 583658, at *1 (9th Cir. Oct.10, 1996) (unpubl.opin.); *see also In re Focus Media,* 378 F.3d 916, 921, 930 (9th Cir.2004).
[34] *Trevino v. Johnson,* 168 F.3d 173, 178 (5th Cir.1999).
[35] *Id.* at 179; *Andrade v. Chojnacki,* 338 F.3d 448, 454 (5th Cir.2003), *cert. denied,* 541 U.S. 935, 124 S.Ct. 1655, 158 L.Ed.2d 355 (2004).

the error."[36] First, Foreman does not allege that her lawyers were ineffective for not investigating and/or raising recusal; thus, there is there is no external cause for failure to raise this alleged error. Secondly, Foreman bears the burden of showing that the Court's failure to *sua sponte* recuse resulted in "'an actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions.'"[37] At most, Foreman suggests, without any factual support, that this Court made unspecified adverse rulings against her *because* of the Court's history with the LWC.[38] Foreman alleges no facts that, if proven, show that this Court made any particular ruling(s) because of the undersigned's prior affiliation as a hearing officer for the LWC. Accordingly, Foreman's ostensible § 2255 recusal claims are procedurally barred.

### E.  The Recusal Claim is Not Cognizable

Additionally, Foreman failed to raise statutory recusal as an error on appeal. A recusal claim under 28 USC § 455(a) is generally not cognizable under § 2255 unless the recusal error implicates the Due Process clause.[39] The Court finds that there was no appearance of impropriety which rose to the level of a "fundamental defect" resulting in "a complete miscarriage of justice." The Court rejects Foreman's purported due process claim *infra*; thus, her statutory recusal claim is not cognizable under § 2255.

### F.  The Recusal Claim is Time Barred

Foreman's recusal claim is also untimely. Foreman had one year from the date that her conviction became final to make this claim.[40] The Fifth Circuits issued its opinion

---

[36] *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).
[37] *Id*. at 233 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).
[38] Rec Doc. No. 170.
[39] *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).
[40] 28 U.S.C. § 2255(f)(1).

affirming the jury's verdict and the Court's sentence on March 12, 2020.[41] No petition for certiorari was filed. Foreman's conviction and sentence became final 151 days later, on August 10, 2022. [42]   Foreman had until August 10, 2021, to make this claim under § 2255(f)(1). The instant Motion was postmarked June 27, 2022 and is thus untimely filed.

### G.  Merits of Recusal Motion

Notwithstanding the foregoing findings, the Court also finds that Foreman's recusal motions should be denied on the merits. The purpose of the recusal statutes set forth above is to guarantee a fair and impartial trial.  As the Fifth Circuit has made clear: "The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside. 'Justice must satisfy the appearance of justice.' This is the very purpose of 28 U.S.C. § 455(a)."[43]  To determine if recusal is proper, there must be an inquiry into the alleged conflict, and the standard for this inquiry is an objective one.[44] When a party seeks the disqualification or recusal of a judge, the burden is on that party to show that "a reasonable person, knowing all of the facts, would harbor doubts concerning the judge's impartiality."[45] The Fifth Circuit established that, to succeed, a party must "clear the foregoing hurdles. They must (1) demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin, (2) place the offending event into the context of the entire trial, and (3) do so by an "objective" observer's standard."[46]  As demonstrated

---

[41] *United States v. Foreman*, 797 Fed. App'x 867 (5th Cir. 2020)
[42] Rec. Doc. No. 172, p. 9, n. 10.
[43] *United States v. Jordan*, 49 F.3d 152, 155-56 (5th Cir. 1995) (quoting *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955)).
[44] *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003)("One of the relevant maxims is that the standard for bias is not 'subjective,' as it once was, but, rather, 'objective.'").
[45] *Sensley v. Albritton*, 385 F.3d 591 (5th Cir. 2004).
[46] *Andrade*, 338 F.3d at 455.

below, Foreman cannot clear these hurdles.

Generally, conduct requiring recusal must come from an "extrajudicial source." As

the Supreme Court explained:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.[47]

Moreover, it is accepted that:

> Under what the United States Supreme Court describes as the "over broadly characterized" extrajudicial-source doctrine, a judge's disqualifying bias or prejudice, under 28 U.S.C.A. §§ 144, 455(b), usually must result in an opinion on the merits on some basis other than what the judge learned from his or her participation in the case. An extrajudicial source means something above and beyond judicial rulings or opinions formed by the judge in presiding over the case. The judge's conduct during the proceedings should not, except in the rarest of circumstances, form the sole basis for recusal.[48]

This includes any facts that have been "learned in a judicial capacity."[49]

The allegedly improper conflict Foreman identified is the undersigned's previous

engagement "as a [sic] Ad Hoc Officer to hear Worker's compensation cases and other

Administrative matters with-in the Louisiana Workforce Commission (LWC)[sic]."[50] The

undersigned held this role for five years between 2008 and 2013. During this time, the

undersigned was appointed to adjudicate matters coming before the LWC; the

undersigned never represented the LWC in these matters. Rather, the undersigned's

---

[47] *Liteky v. United States*, 510 U.S. 540, 555 114 S. Ct. 1147, 1157 127 L. Ed. 2d 474 (1994).
[48] 8 Fed. Proc., L. Ed. § 20:89 (internal footnotes omitted).
[49] *Id*.
[50] Rec. Doc. Nos. 170 & 173.

position was akin to an administrative law judge.[51]    Foreman neither articulates any

material facts nor provides any evidence that would suggest that this Court formed some

bias or prejudice against Foreman during the pendency of her criminal case in this Court

as a result of the Court's prior connection to the LWC.  Likewise, Foreman does not claim

that there was any financial incentive to support bias or impartiality; indeed, her argument

is solely based on the undersigned's prior administrative duties.[52] The relationship

between the undersigned and the LWC was formed through a legally recognized

adjudicatory position, making it an intrajudicial circumstance, not an extrajudicial

circumstance. Accordingly, unless there are facts to support a finding that a fair trial was

impossible, recusal was unwarranted.

While Foreman claims that "all of the decisions made at Ms. Foreman's trial were

against Ms. Foreman and in favor of the prosecution/government,"[53] this fact, if correct,

does not indicate any bias or impropriety. This issue was addressed by our sister court in

*U.S. v. Mackey*:[54]

> Mackey's own assessment of his claim shows that any opinion formed by
> the Court, if any, was the result of "'intrajudicial,' [sources] thus requiring a
> more deferential review than that applicable to [those] of 'extrajudicial'
> origin." *Andrade,* 338 F.3d at 456. Essentially, Mackey complains that the
> Court's rulings in favor of the government and admonitions to defense
> counsel prove the complained of bias. In short, adverse rulings or
> comments dealing with the Court's management of the trial proceedings
> equate with bias, according to Mackey. However, **the U.S. Supreme Court
> is clear in its view that "judicial remarks during the course of
> a trial that are critical or disapproving of, or even hostile to, counsel,
> the parties, or their cases, ordinarily do not support a bias or partiality
> challenge."** *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. The actions

---

[51] **Administrative-law Judge** (1972) An official who presides at an administrative hearing and who has the power to administer oaths, take testimony, rule on questions of evidence, and make factual and legal determinations. *Administrative-law Judge,* Black's Law Dictionary (10th ed. 2014).

[52] Rec. Doc. Nos. 170 & 173.

[53] Rec. Doc. Nos. 170 & 173.

[54] 299 F. Supp. 2d 636 (E.D. La. 2004).

complained of by Mackey do not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* Nor does Mackey show that the Court abused its discretion in not recusing.[55]

The same is true of the rulings this Court made for or against Foreman during the pendency of her criminal case. The Fifth Circuit has already determined that any harsh comments or admonishments made by undersigned at Foreman's criminal hearings did not demonstrate bias or impartiality.[56]

Next, the court must consider the "offending event" within the context of Foreman's trial. Foreman was indicted and ultimately convicted by a jury of creating a scheme to defraud and obtain money from FEMA.[57] The indictment alleges that the LWC "administered" Disaster Unemployment Assistance (DUA) claims made available from FEMA and the United States Department of Labor. Contrary to Foreman's allegation that LWC was the victim of her crimes, LWC was the administrator of the program. FEMA, not the LWC, was the victim of the crimes of which Foreman was charged and convicted. Foreman's claim that the Court was unable to act as an impartial judge due to her connection with the LWC because it was a "victim" in the case is simply unsupported by any facts or evidence.

Moreover, the Government cites to a wealth of caselaw which explains that a judge's professional background, on its own, is rarely enough to justify recusal.[58] Indeed, in *Chitimacha Tribe of Louisiana v. Harry L. L. Co*, the Fifth Circuit determined that a judge's previous work relationship, standing alone, is insufficient to warrant recusal:[59]

---

[55] *Id.* (emphasis added).
[56] *See* Attachment A ("A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.").
[57] Rec. Doc. No. 1
[58] Rec. Doc. 172 p.14.
[59] *Chitimacha Tribe of Louisiana v. Harry L. L. Co.*, 690 F.2d 1157 (5th Cir. 1982).

Judge Davis formerly represented Texaco, Inc., a defendant in this action. Judge Davis was appointed to the bench six years ago. The fact that he once represented Texaco in unrelated matters does not forever prevent him from sitting in a case in which Texaco is a party. Section 455(b)(2) only requires a judge to disqualify himself if "he served as a lawyer in the matter in controversy." (emphasis added). The relationship between Judge Davis and Texaco, terminated at least six years ago, is too remote and too innocuous to warrant disqualification under s 455(a) or s 144."[60]

The *Chitimacha* court determined that, after six years, the connection between the judge and the defendant had waned such that there was no longer a conflict of interest. In the instant case, by the time of Foreman's trial in March of 2018, the undersigned had been on the federal bench for nearly five years. Therefore, any past connection between the undersigned and the LWC was "too remote and too innocuous to warrant disqualification."[61] Furthermore, there is no evidence to support the suggestion that the undersigned maintained any relationship with the LWC, or was influenced by some financial incentive, at the time of Foreman's trial (or any time after the undersigned was appointed to the federal bench).

In applying an objective standard to the purported conflict of interest, the Fifth Circuit instructs: "we ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." [62] In the instant case, there is no reasonable, objective basis in the current record to conclude that the undersigned's prior administrative adjudicatory duties with the LWC prior to her appointment to the federal bench caused any actual – or the appearance of – impartiality or bias at Foreman's trial.

---

[60] *Id.* at 1166.
[61] *Id.*
[62] *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995).

### H.  Due Process

Foreman does not explicitly raise a constitutional claim; however, out of an abundance of caution, the Court will address the issue.  Due process guarantees "an absence of actual bias" on the part of a judge. [63]  The question is "whether, as an objective matter, the average judge in [her] position is likely to be neutral, or whether there is an unconstitutional potential for bias."[64] To meet this standard requires "extreme facts."[65] As discussed in the previous section, prior to taking the federal bench, the undersigned was hearing officer for the LWC. The undersigned did not "represent" the LWC as an attorney. This Court's work as an administrative hearing officer for the LWC was long over before this case began.[66] There is no allegation that the Court had extrajudicial knowledge about the people or facts of this case or that the Court had any financial connection to the LWC. Foreman alleges no facts that demonstrate, as an objective matter, "a possible temptation to the average judge [that would] lead [her] not to hold the balance nice, clear and true."[67] No due process claim has been plausibly pled; alternatively, Foreman's due process claim is denied on the merits.

---

[63] *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)(citing *In re Murchison,* 349 U.S. 133, 136 (1955)).
[64] *Id.*
[65] *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886–888 (2009); *United States v. Brocato*, 4 F.4th 296, 305 n. 1 (5th Cir. 2021).
[66] This Court's administrative hearing work for the LWC ended in 2013, upon appointment to the bench, about four years before the defendant was indicted.
[67] *Caperton*, 556 U.S at 886.

III.    **CONCLUSION**

For the foregoing reasons, Foreman's Section 2255 *Motions for Disqualification and Recusal*[68] are DENIED.  Foreman's pending motions in this Court will be handled in due course.[69]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  7th  day of November, 2022.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[68] Rec. Doc. Nos. 170, 173.  Foreman has filed several briefs in further support of these motions. The Court has considered all filings in the record.
[69] Foreman has filed a Section 2255 Motion to Vacate as well as Motions for Compassionate Release that are pending before the Court.  Rec. Doc. Nos. 121, 145, 190, & 191.  The suggestion that the Court has delayed ruling on Foreman's motions based on any bias against her is without merit and unsupported by the record.  The Court ruled on Foreman's recusal motion "out of order" to resolve any issue of impartiality or bias before turning to the merits of Foreman's remaining motions.  The Court addresses all litigants' motions as timely as possible in the proper priority based on the nature of the cases, their associated deadlines, and the trial backlog created by the COVID-19 pandemic, which has affected all courts in the nation.

ATTACHMENT A

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U. S. COURT OF APPEALS
F I L E D

JAN 14 2019

FIFTH CIRCUIT
LYLE W. CAYCE, CLERK

IN RE:

The Complaint of Renata Foreman Against

Chief United States District Judge Shelly D. Dick,

Middle District of Louisiana,

Under the Judicial Improvements Act of 2002.

Docket Number: 05-18-90089

O R D E R

Criminal defendant Renata Foreman alleges that Chief United States District
Judge Shelly D. Dick's conduct during a June 14, 2018 hearing in M.D. La. No. 3:17-
cr-00119 "was beyond personal and prejudice she's an undercover racist ... her Ora
[sic] was just nasty her arrogance was just uncalled for." In support of these
allegations, Foreman claims that Chief Judge Dick: was angry that the hearing, which
was originally scheduled as a sentencing hearing, because it "was converted to the
motion hearing for my counsel to withdraw"; stated that she did not believe Foreman's
representations about defense counsel's conduct; "told me ... this wasn't going to
[buy] time I'm going to be sentenced and I'm going to jail ... she wasn't giving me a
new trial"; and ""is to[o] busy gunning for me and trying to imprison me. [She] made
it a priority to ask [the magistrate judge]" to convene a hearing regarding withdrawal
of counsel, following which the court would promptly schedule a sentencing hearing.

A review of the audio-recording of the June 14, 2018 hearing demonstrates that
to the extent that Chief Judge Dick stated that she found Foreman's claims against
defense counsel to be without merit, expressly surmised that Foreman appeared to be

trying to delay sentencing and imprisonment, and emphasized that any argument about ineffectiveness of counsel could only be raised postconviction, the chief judge displayed neither "arrogance" nor anger.

Foreman further asserts that Chief Judge Dick "… has sided with the prosecutor … and [defense counsel]," and when "someone else came forward and told [defense counsel] they committed the crime, … [Chief] Judge Dick didn't want to hear it." Foreman also contends that the Middle District of Louisiana lacked jurisdiction over the criminal proceeding.

To the extent that Foreman complains about the chief judge's demeanor during the June 14, 2018 hearing, in Liteky v. U.S., 510 U.S. 540, 555-556 (1994), the U.S. Supreme Court held that judicial bias is not established by a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." The allegation is therefore subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii).

To the extent that Foreman alleges that the chief judge expressed negative opinions about her representations to the court, in Liteky the U.S. Supreme Court also held that "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant … But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings …." Liteky, 510 U.S. at 551. The allegation is therefore also subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii).

To the extent that the allegations relate directly to the merits of the chief judge's decisions, including exercising jurisdiction, they are subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(ii). In other respects, such conclusory assertions of racial bias

and personal animus are insufficient to support a finding of judicial misconduct, and are therefore subject to dismissal under 28 U.S.C. § 352(b)(1)(A)(iii).

Judicial misconduct proceedings are not a substitute for the normal appellate review process, nor may they be used to obtain reversal of a decision or a new trial.

The complaint is DISMISSED.

Carl E. Stewart
Chief Judge

January 9, 2018